FILED

DEC 1 1 2014

U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ADRIAN F. KING, JR.,
    Plaintiff,

v.                                                         Civil Action No. 3:14-cv-42

JIM RUBENSTEIN, Commissioner; et al.,
    Defendants.

## REPORT AND RECOMMENDATION/ORDER

On March 7, 2014, *pro se* Plaintiff Adrian F. King, Jr. ("Plaintiff") filed a Complaint initiating this civil rights action pursuant to 42 U.S.C. § 1983 in the Circuit Court of Kanawha County, West Virginia. (Docket No. 1-2.) On April 11, 2014, Defendants Rubenstein, Plumley, Miller, Rosencrance, Thompson, Davis, Smith, Sr., Gsell, and Smith (collectively, "Defendants") removed the matter to the Southern District of West Virginia and filed a motion to dismiss and memorandum in support. (Docket Nos. 1, 2, 3.) On April 23, 2014, United States Magistrate Judge Dwane L. Tinsley entered an Order directing that the case be transferred to this Court pursuant to 28 U.S.C. § 1406. (Docket No. 5.) On April 28, 2014, the undersigned issued notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), informing Petitioner of his right to file material responsive to Defendants' motion to dismiss. (Docket No. 10.) Plaintiff filed his response on May 12, 2014 (Docket No. 16), and Defendants filed a reply on May 19, 2014 (Docket No. 17). Plaintiff filed what was titled "Response to Defendants' Second Motion to Dismiss" on June 9, 2014. (Docket No. 18.) Defendants filed a motion to strike that filing on June 10, 2014. (Docket No. 19.) On June 26, 2014, Plaintiff filed a "Motion for Leave to File a Surreply," which also included a request for the appointment of counsel. (Docket No. 20.)

# I. Contentions of the Parties

## A. Plaintiff's Complaint

In his Complaint, Plaintiff alleges that in 2008, he had a surgical procedure to implant marbles in his penis. (Docket No. 1-2 at 10.) In January 2013, while incarcerated at Huttonsville Correctional Center ("HCC"), Defendant states that he was placed in administrative segregation for an alleged violation of Policy Directive 325.00-1.26, "Exposing Body Fluids/Tattooing/Piercing." (Id. at 19-20.) According to Plaintiff, HCC staff believed that he had implanted the marbles since arriving at HCC. (Id. at 19.) Plaintiff was found guilty of the violation and was sentenced to sixty (60) days of segregation, sixty (60) days of lost privileges, and ninety (90) days of lost good time. (Id. at 20.) Subsequently, Plaintiff alleges that Unit Manager Sherri Davis had him sign consent forms to go to Ruby Memorial Hospital to have a doctor examine the implants and, if necessary, remove them. (Id.)

Plaintiff further alleges that on January 31, 2013, he was taken to Ruby Memorial Hospital, where he was examined by Dr. Henry Fooks, Jr. (Id.) According to Plaintiff, Dr. Fooks determined that the implants had not been recently done, that there was no medical reason to remove them, and that staff at HCC could not force him to remove them. (Id.) Plaintiff was taken back to HCC, where he alleges Deputy Warden Grover Rosencrance placed him in the segregation unit again. (Id.) Plaintiff states that he remained in segregation from January 31 until June 19, 2013, when he consented to be taken to Ruby Memorial Hospital to have the marbles removed. (Id.)

As a result, Plaintiff alleges the following claims:

1. Violation of Eighth Amendment right to be free from cruel and unusual punishment;

2. Violation of Fourteenth Amendment right to equal protection; and

3. Violation of Fourth Amendment right to be free from illegal seizures.

(Id. at 9-12, 18-21.) As relief, he requests:

1. Compensation (including punitive damages) in the amount of $500,000;

2. Replacement of implants and repair of tattoo "due to scarring through tattoo after unwanted/forced surgery at Ruby Memorial";

3. Full restoration of good time credit;

4. Expungement of all disciplinary infractions pertaining to the incident;

5. Reimbursement of any attorney fees, filing fees, and court costs;

6. An injunction to prevent any retaliatory actions by prison staff; and

7. A formal investigation into staff misconduct and appropriate sanctions implemented.

(Id. at 14, 22.)

**B.     Defendants' Motion to Dismiss**

Defendants allege that Plaintiff's Complaint should be dismissed for the following reasons:

1. Plaintiff's Complaint fails to allege sufficient facts to state a claim upon which relief can be granted;

2. Individuals sued in their official capacities are not "persons" under 42 U.S.C. § 1983 and must be dismissed;

3. These Defendants are entitled to qualified immunity to the extent they are sued in their individual capacities;

4. Defendant Jim Rubenstein must be dismissed because the Plaintiff fails to state a claim upon which relief can be granted against him;

5. Plaintiff is barred from recovering for an action to which he consented;

6. Plaintiff cannot maintain a claim for punitive damages; and

7.  Plaintiff's claim for injunctive relief should be denied.

(Docket No. 3 at 3-15.)

### C. Plaintiff's Response

In his response, Plaintiff asserts that the "Administration and Staff at HCC, had no jurisdiction/cause to "**FORCE**" the Plaintiff to consent to the surgery in question." (Docket No. 16 at 2.) He further alleges that he "resisted the threats by Staff for as long as he possibly could, and then he gave in due to the several months he was deprived of his "**RIGHT**" to live in General Population and coexist with individuals he has lived with for several years." (Id.)

### D. Defendants' Reply

Again, Defendants assert that Plaintiff's Complaint should be dismissed because:

1.  Plaintiff's Complaint fails to allege sufficient facts to state a claim upon which relief can be granted;

2.  Defendant Jim Rubenstein must be dismissed because Plaintiff fails to state a claim upon which relief can be granted against him; and

3.  Plaintiff is barred from recovering for an action to which he consented.

(Docket No. 17 at 2-4.)

### E. Plaintiff's Surreply

In his surreply, Plaintiff again alleges that his Eighth Amendment rights have been violated because he has been subjected to psychological and emotional abuse since undergoing the procedure. (Docket No. 18 at 1-5.) Plaintiff has attached memoranda from his administrative segregation hearing reviews as well as affidavits from fellow prisoners. (Docket Nos. 18-1 and 18-2.)

## II. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,

it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1999)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in

Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### III. Analysis

**A.  Plaintiff's Motion for Leave to File Surreply; Defendants' Motion to Strike**

As noted above, Plaintiff filed a surreply in this matter on June 9, 2014. (Docket No. 18.) Defendants filed a motion to strike the surreply, citing L.R. Civ. P. 7.02(b)(3), which provides that "[p]arties shall not file surreply memoranda except by leave of court." (Docket No. 19.) Subsequently, Plaintiff filed a motion for leave to file a surreply. (Docket No. 20.) Although Plaintiff filed his motion for leave to file subsequent to filing his surreply, the Court will consider the surreply, **GRANT** his motion to the extent it requests leave to file, and **DENY** Defendants' motion to strike.

In his motion, Plaintiff also requests that the Court "appoint counsel so that the Plaintiff will have the opportunity of Full and Fair litigation." (Docket No. 20 at 2.) It is well settled that in a civil action, the Court should appoint counsel to represent an indigent only after a showing of particular need or exceptional circumstances. Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). Upon review of Plaintiff's motion, the undersigned is of the opinion that Plaintiff has failed to show a particular need or exceptional circumstances that would require the assistance of a trained practitioner.

Accordingly, Plaintiff's motion is **DENIED** to the extent it seeks appointment of counsel.

In sum, Plaintiff's "Motion for Leave to File a Surreply" (Docket No. 20) is **GRANTED IN PART** to the extent it requests leave to file a surreply and **DENIED IN PART** to the extent it requests appointment of counsel. Defendants' "Motion to Strike Plaintiff's 'Response to Defendants' Second Motion to Dismiss'" (Docket No. 19) is **DENIED**.

**B.    Defendant Stacy Scott**

Plaintiff has named Stacy Scott, Supervised Psychologist/Ad-Seg Board, as a Defendant in this matter. Defendant Scott has never made an appearance in this matter. The record reflects that on March 24, 2014, David Teter, a Process Server for the Randolph County Sheriff's Department, attempted to serve Mr. Scott. (Docket No. 1-2 at 30.) However, the summons was sent back to the Circuit Court of Kanawha County because defendant Scott no longer worked at HCC. (Id.) No other attempt at service is reflected in the record.

Because Plaintiff commenced this action in State court, service of the Defendants is governed by Rule 4 of the West Virginia Rules of Civil Procedure. That rule provides in pertinent part:

> (1) *Individuals*. Service upon an individual other than an infant, incompetent person, or convict may be made by:
>
> (A) Delivering a copy of the summons and complaint to the individual personally; or
>
> (B) Delivering a copy of the summons and complaint at the individual's dwelling place or usual place of abode to a member of the individual's family who is above the age of sixteen (16) years and by advising such person of the purport of the summons and complaint; or
>
> (C) Delivering a copy of the summons and complaint to an agent or attorney-in-fact authorized by appointment or statute to receive or accept service of the summons and complaint in the individual's behalf; or

> (D) The clerk sending a copy of the summons and complaint to the individual to be served by certified mail, return receipt requested, and delivery restricted to the addressee; or
>
> (E) The clerk sending a copy of the summons and complaint by first class mail, postage prepaid, to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to Form 14 and a return envelope, postage prepaid, addressed to the clerk.

W. Va. R. Civ. P. 4(d)(1). It is clear from the record that service upon defendant Scott was not accomplished by any of these provisions. While service was attempted, it was never effected because defendant Scott no longer worked at HCC.

Furthermore, even after Plaintiff's Complaint was removed to federal court, there were no attempts for defendant Scott to be served. Rule 4 of the Federal Rules of Civil Procedure set forth the requirements for service. That Rule provides in pertinent part:

> Unless federal law provides otherwise, an individual–other than a minor, an incompetent person, or a person whose waiver has been filed–may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> §(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Again, there was no further attempt to serve defendant Scott either under the provisions of this Rule or Rule 4 of the West Virginia Rules of Civil Procedure. Accordingly, the

undersigned recommends that defendant Scott be dismissed without prejudice because of Plaintiff's failure to obtain service upon him.

C.  **Defendants Rubenstein, Plumley, and Goodin**

Plaintiff has also named Commissioner Jim Rubenstein, Warden Marvin Plumley, and Head Psychologist Cliff Goodin as defendants in this matter.

Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Therfore, to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

In this case, Plaintiff's Complaint makes no specific allegations against Rubenstein, Plumley, and Goodin to indicate that they were personally involved in any alleged violation of his constitutional rights. Rather, it appears that Plaintiff has merely named these defendants in their official or supervisory capacities as Commissioner, Warden, and Head Psychologist. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). In this case, Plaintiff fails to assert that a policy

or custom of the prison played a part in the alleged violation of his constitutional rights.

There is no *respondeat superior* liability under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-92 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, 550 F.2d at 928. A supervisor may be liable under § 1983 if the following elements are established:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1999). Here, Plaintiff fails to make any allegations revealing the presence of the required elements for supervisory liability. Accordingly, the undersigned recommends that defendants Rubenstein, Plumley, and Goodin be dismissed with prejudice from this action for Plaintiff's failure to state a claim against them.[1]

## D.     Eighth Amendment Claim

Plaintiff first claims that Defendants violated his Eighth Amendment rights when they "[a]bused their power when they took it upon themselves to use threats of Administrative Segregation for the remainder of my sentence and loss of Parole Eligibility in order to intimidate me into consenting to a surgery that they had no right to have performed." (Docket No. 1-2 at 10.) In his response, Plaintiff asserts that he "gave in due to the several months he was deprived of his

---

[1] The record reflects that even though defendant Goodin was served (Docket No. 1-2 at 33), he never made an appearance in this matter. Nevertheless, because Plaintiff has failed to state a claim against defendant Goodin, the undersigned finds it unnecessary to address this issue.

10

"**RIGHT**" to live in General Population and coexist with individuals he has lived with for several years." (Docket No. 16 at 2.)

"In order to make a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991)). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an extreme deprivation, a prisoner must allege "a serious or significant physical or emotional injury resulting from the challenged conditions," Strickler, 989 F.2d at 1381, or a "significant risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," De'Lonta, 330 F.3d at 634. The subjective component is satisfied by a showing of deliberate indifference by prison officials, which "entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The Fourth Circuit has held that "before pain of a constitutional magnitude can be said to exist, there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition. Shrader v. White, 761 F.2d 975, 979 (4th Cir. 1985).

The undersigned finds that Plaintiff's Complaint fails to allege "a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler, 989 F.2d at 1381. As an initial matter, segregated confinement is not *per se* unconstitutional. See Allgood v. Morris, 724 F.2d 1098, 1101 (4th Cir. 1984). Furthermore, while Plaintiff alleges that he continues to

11

experience physical pain at his surgical site and emotional anguish because he experiences depression and is "constantly ridiculed by staff," those symptoms did not result from Plaintiff's time in administrative segregation. Rather, those alleged symptoms resulted from the surgical procedure Plaintiff underwent to remove the marble implants. Accordingly, because Plaintiff has not alleged "a serious or significant physical or emotional injury resulting from" his placement in administrative segregation, Strickler, 989 F.2d at 1381, the undersigned recommends that Defendants' motion to dismiss be granted as to Plaintiff's Eighth Amendment claim.

E.     **Fourteenth Amendment Equal Protection Claim**

Plaintiff also claims that the Defendants' actions violated his equal protection rights under the Fourteenth Amendment to the United States Constitution. (Docket No. 1-2 at 21.) Specifically, Plaintiff states: "The Administration here at Huttonsville has chosen to single me out for some unknown reason. There are several other inmates here at Huttonsville that have implanted foreign objects into their penises, only to be permitted to keep them." (Id.) He also notes that while some inmates have been placed in segregation for the same act, they have been allowed to return to the general population "without having any kind of surgery or removal." (Id. at 11.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 472 U.S. 432, 440 (1985).

> To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated different from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

A court should construe *pro se* complaints liberally, no matter how unskillfully pleaded. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). As noted above, in his Complaint, Plaintiff alleges that defendants Rosencrance, Miller, Thompson, Davis, Gsell, Smith, Sr., and Smith "single[d] him out" for both an extended period of administrative segregation and the surgical procedure even though other inmates at HCC with similar implants have neither been kept in segregation for an extended period nor have been forced to undergo surgical removal of their implants. (Docket No. 1-2 at 11, 21.) Plaintiff further alleges that this is so even though some inmates have implanted objects subsequent to their arrival at HCC. (Id. at 21.) Given this, it appears to the undersigned that when Plaintiff's Complaint is liberally construed, with all inferences in Plaintiff's favor, that Plaintiff has stated a potentially cognizable claim against defendants Rosencrance, Miller, Thompson, Davis, Gsell, Smith, Sr., and Smith for violating his equal protection rights under the Fourteenth Amendment. Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied as to this claim.

**F.     Fourth Amendment Claim**

Finally, Plaintiff alleges that his Fourth Amendment rights were violated "when the Surgical Glass Marbles he had implanted in the top of his penis were illegally seized." (Docket No. 1-2 at 12.) Specifically, he states that his right "to be protected against Illegal Search and Seizure were [sic] violated when the staff members named herein used threats of Administrative Segregation until his Discharge Date and Physical Violence in order to intimidate the Petitioner into consenting to have his Professionally implanted marbles removed." (Id.)

"The applicability of the Fourth Amendment turns on whether 'the person invoking its

protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy' that has been invaded by government action.'" Hudson v. Palmer, 468 U.S. 517, 525 (quoting Smith v. Maryland, 442 U.S. 735, 740 (1979) (other quotation marks omitted)). In the context of prison, prisoners are "accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Id. at 523.

"It is a piece of constitutional bedrock that individuals have a reasonable expectation of privacy regarding their bodies. Thus, a physical intrusion below the skin constitutes a search within the purview of the Fourth Amendment." Spencer v. Roche, 659 F.3d 142, 146 (1st Cir. 2011). Such reasoning applies to inmates, see Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir. 1995), although "a prison inmate has a far lower expectation of privacy than do most other individuals in our society," Goff v. Nix, 803 F.2d 358, 365 (8th Cir. 1986). A reviewing court must "'balanc[e] the need for the particular search against the invasion of personal rights that the search entails.'" Cookish v. Powell, 945 F.2d 441, 446 (1st Cir. 1991) (per curiam) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). As the First Circuit has noted:

> [I]n determining the reasonableness of an intrusion into a suspect's bodily integrity, a court must consider the strength of the suspicion driving the search, the potential harm to the suspect's health and dignity posed by the search, and the prosecution's need for the evidence sought. In certain circumstances, the court also may consider the availability vel non of a less invasive means of conducting the search.

Spencer, 659 F.3d at 147.

The undersigned finds the First Circuit's decision in Sanchez v. Pereira-Castillo, 590 F.3d 31 (2009), to be instructive to this matter. In his complaint, Sanchez had alleged that while he was an inmate in a Puerto Rico correctional institution,

> he was forced to undergo dangerous, painful, and extremely intrusive abdominal

surgery for the purpose of finding a contraband telephone allegedly concealed in his intestines, even though the basis for believing there was a telephone was slight, several tests had indicated the absence of any such object, and additional, far less intrusive testing could easily have obviated any need for such grievous intrusion.

Id. at 44. The district court granted the defendants' motions to dismiss for failure to state a claim.

Id. at 36. On appeal, the First Circuit reversed, concluding that "'society is prepared to recognize' that a prisoner has a reasonable expectation that he will not be forced to undergo abdominal surgery for the purposes of finding contraband, at least in these circumstances." Id. at 47-48. The panel further noted that "[w]hen a medical procedure is performed at the instigation of law enforcement . . ., the fact that the search is executed by a medical professional does not insulate it from Fourth Amendment scrutiny." Id. at 47.

The Supreme Court has held that a state cannot compel a criminal suspect to undergo a surgical procedure to remove a bullet lodged in his chest, although that bullet would be helpful to the State in prosecuting the suspect for an alleged crime. See Winston v. Lee, 470 U.S. 753, 756 (1985). The Court explained:

> The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure. In a given case, the question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers. . . . Notwithstanding the existence of probable cause, a search for evidence of a crime may be unjustifiable if it endangers the life or health of the suspect.

Id. at 760-61. Here, however, the situation involves the search of a prisoner, whereas Winston involved the search of a "citizen–not yet convicted of a criminal offense." Id. at 765. "Nonetheless, the Supreme Court's precedent on compelled surgical invasion is unquestionably relevant to [the] analysis of the scope of the surgery in question here." Sanchez, 590 F.3d at 45.

The Winston Court distinguished the Court's earlier case of Schmerber v. California, 384 U.S. 757 (1966), where it ruled that a suspect's Fourth Amendment rights were not violated by the drawing of blood by a medical doctor, at the behest of a police officer, to determine the suspect's blood alcohol content. Id. at 758, 773. The Court found that the blood draw procedure was "commonplace . . . and experience with [it] teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." Id. at 771. Other factors the Court found important were "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity" and "the community's interest in fairly and accurately determining guilt or innocence." Winston, 470 U.S. at 761-62.

Here, however, Plaintiff's surgical procedure was not "commonplace" and did involve "risk, trauma, or pain." Schmerber, 384 U.S. at 771. Unlike a blood draw, Plaintiff's surgery was unusual. In his Complaint, Plaintiff alleges the following:

1. I still have pain in my penis where the marbles were removed.

2. I have tingling in my penis that feels like it [sic] numb.

3. I have a uncomfortable, stretching feeling where the cut was made.

4. If I bump into something or my penis is touched where the scar is, a stabbing pain shoots into my stomach.

5. When it rains/snows, or gets cold, I get a [sic] atrocious pain in my penis.

(Docket No. 1-2 at 9.) Plaintiff further asserts that he gets "very depressed every time [he] shower[s] or urinate[s]," and that he cannot urinate when any of his five (5) cellmates are in the cell. (Id.)

Furthermore, Plaintiff has alleged a "lack of 'justification' for the procedure." Sanchez, 590 F.3d at 45 (quoting Wolfish, 441 U.S. at 559). In his Complaint, Plaintiff states that when the

defendants learned of his implants, they charged him with a violation of Policy Directive 325.00-1.26, "Exposing Body Fluids/Tattooing/Piercing." (Docket No. 1-2 at 20.) Plaintiff was found guilty of the violation and was sentenced to sixty (60) days of punitive segregation, sixty (60) days of loss of privileges, and ninety (90) days of lost good time. (Id.) Plaintiff did not undergo surgery to have the marbles removed until he had already been sentenced for that violation and was serving time in the administrative segregation unit. (See id.) Viewing Plaintiff's factual allegations as true, the Court cannot find a reasonable justification for the procedure at this point in the proceedings.

In their memorandum supporting their motion to dismiss, Defendants assert that Plaintiff consented to the surgical procedure and should therefore be barred from recovering. (Docket No. 3 at 12.) In his Complaint, Plaintiff states that he signed the consent papers only after being told that he would remain in administrative segregation until he had the marbles removed. (Docket No. 1-2.) In his surreply, Plaintiff also alleges that he was told that if he refused to consent, he would be transferred to the "Quality of Life" program at Mount Olive Correctional Unit and that staff would ensure he did not make parole. (Docket No. 18 at 3-4.) Like the First Circuit in Sanchez, the undersigned does "not find that plaintiff's signed consent form eliminates the Fourth Amendment concerns raised by the surgery." Sanchez, 590 F.3d at 46. The Sanchez Court noted:

> Plaintiff was a prisoner who had been under constant surveillance for more than day prior to the surgery, and had been forced to submit to searches, x-rays, and invasive rectal examinations prior to his signing the consent form. He had twice been forced to excrete on a floor in the presence of prison personnel. In light of these intimidating circumstances, plaintiff's claim that he was pressured and intimidated into signing the consent form is plausible.

Id.

Given this, the undersigned cannot reasonably find that the circumstances Plaintiff faced were

as intimidating as those present in Sanchez. However, Plaintiff's claim that he only signed the consent form after being informed that he would either remain in administrative segregation indefinitely or be sent to Mount Olive with no chance of parole is plausible, because, according to his Complaint, his signing the consent form was the only obstacle between him and general population. But see Hancock v. Hood, 686 F. Supp. 2d 1240, 1249-50 (S.D. Ala. 2010) (finding that plaintiff's Fourth Amendment claim was foreclosed by plaintiff's consent to surgery and plaintiff's failure to "allege that he was compelled by anyone to undergo the surgery against his will"). Accordingly, the undersigned cannot find that the consent form precludes Plaintiff's claim that he was deprived of his Fourth Amendment rights. See United States v. Boone, 245 F.3d 352, 363 (4th Cir. 2001) (noting that inquiry for consent is whether, under the totality of the circumstances, a defendant was coerced, or whether his "will was overborne").

Accordingly, viewing Plaintiff's allegations as true, the undersigned finds that Plaintiff has stated a potentially cognizable claim against defendants Rosencrance, Miller, Thompson, Davis, Gsell, Smith, Sr., and Smith for violating his Fourth Amendment rights against unreasonable search and seizure. Accordingly, the undersigned recommends that Defendants' motion to dismiss also be denied as to this claim.

In sum, the undersigned finds that Defendant Scott should be dismissed without prejudice for Plaintiff's failure to effect service, and that Defendants Rubenstein, Plumley, and Goodin should be dismissed without prejudice because Plaintiff's Complaint fails to state a claim against them. The undersigned further finds that Defendant's Eighth Amendment claim should be dismissed. However, Plaintiff has pleaded plausible Fourteenth Amendment equal protection and Fourth Amendment claims in his Complaint, and so the undersigned recommends that this case be allowed to proceed

as to those claims and the remaining defendants.

## IV. Order and Recommendation

For the foregoing reasons, the undersigned **ORDERS** the following:

- Plaintiff's "Motion for Leave to File a Surreply" (Docket No. 20) is **GRANTED IN PART** to the extent it requests leave to file a surreply and **DENIED IN PART** to the extent it requests appointment of counsel; and

- Defendants' "Motion to Strike Plaintiff's 'Response to Defendants' Second Motion to Dismiss'" (Docket No. 19) is **DENIED**.

The undersigned also **RECOMMENDS** the following:

- Defendants' motion to dismiss (Docket No. 2) be **GRANTED IN PART** as to Defendants Jim Rubenstein, Marvin Plumley, Stacy Scott, and Cliff Goodin, and as to Plaintiff's Eighth Amendment claim; and **DENIED IN PART** as to the remaining defendants and Plaintiff's Fourteenth Amendment equal protection and Fourth Amendment claims; and

- Plaintiff's Complaint (Docket No. 1-2) be **DISMISSED WITHOUT PREJUDICE** as to Defendant Stacy Scott for failure to effect service; and **DISMISSED WITH PREJUDICE** against Jim Rubenstein, Marvin Plumley, and Cliff Goodin for failure to state a claim upon which relief can be granted.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn,

474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to counsel of record and to mail a copy to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: December 11, 2014

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE